IN THE SUPREME COURT OF NORTH CAROLINA

No. 68A24

Filed 22 May 2026

STATE OF NORTH CAROLINA

v.

JULIE ANN MINCEY

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 292 N.C. App. 345 (2024), affirming the trial court's judgment entered on 23 January 2023 by John E. Nobles Jr., in Superior Court, Craven County. On 11 December 2024, the Supreme Court allowed the State's petition for discretionary review pursuant to N.C.G.S. § 7A-31 and petition for writ of certiorari as to additional issues. Heard in the North Carolina Supreme Court on 9 September 2025.

> *Jeff Jackson, Attorney General, by Kristin J. Uicker, Special Deputy Attorney General, for the State-appellee.*
>
> *Glenn Gerding, Appellate Defender, by Aaron Thomas Johnson, Assistant Appellate Defender, for defendant-appellant.*

RIGGS, Justice.

In this case, we are asked to determine whether the Court of Appeals erred as a preliminary matter when it held that defendant Julie Ann Mincey had a right of appeal under N.C.G.S. § 15A-1444(a2)(3) from her guilty plea to attaining habitual felon status, and whether the Court of Appeals further erred in its review of the

merits of Ms. Mincey's appeal. In addressing the merits, the Court of Appeals considered whether the trial court complied with N.C.G.S. § 15A-1022(c)'s statutory mandate requiring the court to determine whether there was a factual basis for Ms. Mincey's guilty plea. *State v. Mincey*, 292 N.C. App. 345, 350 (2024). Because we hold that Ms. Mincey lacked the right to appeal from her guilty plea to attaining habitual felon status and that, therefore, the Court of Appeals did not have jurisdiction to review the trial court's judgment, we reverse the decision of the Court of Appeals and remand this case for proceedings not inconsistent with this opinion.

## I.    Factual and Procedural Background

Julie Ann Mincey moved from Colorado to New Bern, North Carolina, and operated a travel agency through which she systematically defrauded victims, primarily elderly retirees, through elaborate travel booking schemes that netted her over $100,000. Her victims trusted her to arrange complex international and domestic travel packages, including anniversary trips, historic train tours, cruises, and specialty excursions. Ms. Mincey would collect deposits and payments for her services promising to handle all travel arrangements, but then she would suddenly cancel the trips and cease communication, leaving the victims with no trip, no refunds, and no way to get in touch with her.

A grand jury indicted Ms. Mincey for sixteen felony offenses—fourteen counts of embezzlement and two counts of obtaining property by false pretenses—and for attaining habitual felon status.

Ms. Mincey's trial was held from 1 August to 8 August 2022. Of the charged offenses, five were dismissed, and eleven ultimately reached the jury, including ten counts of embezzlement and one count of obtaining property by false pretenses.

At trial, Ms. Mincey admitted to attaining habitual felon status. The trial court engaged in a colloquy to ensure Ms. Mincey understood the consequences of her admission on her right to appeal, and after Ms. Mincey confirmed her understanding of the consequences, she pleaded guilty to the habitual felon status.

The State presented its factual basis for the habitual felon status through evidence of three Colorado felony convictions from when Ms. Mincey lived in Colorado: attempted theft from 13 January 1987 (convicted 31 March 1989) under Colo. Rev. Stat. § 18-4-401 in the District Court, Arapahoe County; second-degree forgery from 15 March 1990 (convicted 22 April 1991) under Colo. Rev. Stat. § 18-5-103 in the District Court, Denver County; and five counts of theft committed between 3 February and 31 March 2001 (convicted 26 February 2004) under Colo. Rev. Stat. § 18-5-102 in the District Court, Douglas County. The State presented copies of the Colorado statutes in effect on the dates of Ms. Mincey's Colorado convictions as well as certified records of the prior convictions.

In response to the State's factual basis presentation, Ms. Mincey's defense counsel agreed with the State that "the statutes under which [Ms. Mincey] was convicted, three predicate felonies, were all designated as felonies under Colorado law at the time and [were] still designated as felonies." Based on those

representations, the trial court found a factual basis for Ms. Mincey's guilty plea to attaining habitual felon status and found that "the plea is the informed choice of the defendant given freely, voluntarily and understandingly."

The jury found Ms. Mincey guilty of nine counts of embezzlement and one count of obtaining property by false pretenses. The trial court consolidated the offenses, including attaining habitual felon status, into one judgment, imposing a sentence in the mitigated range of forty-four to sixty-five months imprisonment and ordering restitution of $53,402.58. Ms. Mincey gave oral notice of appeal in open court.

On appeal, Ms. Mincey argued that the trial court failed to comply with N.C.G.S. § 15A-1022(c). *See* N.C.G.S. § 15A-1022(c) (2025) (requiring trial courts not to accept a guilty plea without first determining that there is a factual basis for the plea). Ms. Mincey's defense counsel had incorrectly stated that the second-degree forgery conviction was still a felony in Colorado, and Ms. Mincey later determined Colorado had, in 1993, reclassified the crime as a misdemeanor, subsequent to her 1991 conviction. *Mincey*, 292 N.C. App. at 347–48. Thus, Ms. Mincey argued there was no factual basis for the guilty plea because the second underlying felony used to determine that she had attained habitual felon status was no longer a felony at the time she was being sentenced. *Id.* at 347. She contended that the Court of Appeals "should consider whether a defendant's underlying felonies are still felonies at the time a defendant committed the substantive offense for which he or she is currently being sentenced." *Id.* Finally, Ms. Mincey asked the Court of Appeals to vacate the

judgment and remand for resentencing absent the habitual felon sentencing enhancement. *Id.* at 348.

Before reaching the merits, the Court of Appeals first determined whether it had jurisdiction to consider Ms. Mincey's appeal, which required the court to determine whether Ms. Mincey had the right to appeal after pleading guilty to attaining habitual felon status. *Id.* The Court of Appeals ultimately determined that Ms. Mincey had a statutory right of appeal under N.C.G.S. § 15A-1444(a2)(3) because she was asserting that a deficient plea to habitual felon status resulted in an unauthorized term of imprisonment. *Id.* at 348–49; *see also* N.C.G.S. § 15A-1444(a2)(3) (2025). The Court of Appeals then dismissed as moot Ms. Mincey's petition for writ of certiorari, which she had also filed with the court below, because she had a statutory right of appeal. *Mincey,* 292 N.C. App. at 349.

The Court of Appeals then reviewed the merits of Ms. Mincey's appeal. Regarding Ms. Mincey's challenge to the sufficiency of the factual basis for the trial court's acceptance of a guilty plea for habitual felon status, the Court of Appeals held that the trial court complied with subsection 15A-1022(c) and affirmed the judgment. *Id.* at 349–51. The court then explained that the trial court did not err in determining there was a factual basis for Ms. Mincey's guilty plea because the second-degree forgery was a felony at the time of Ms. Mincey's conviction in 1991. *Id.* at 350–51. Acknowledging that the Colorado law had subsequently changed, the Court of Appeals relied on both N.C.G.S. § 14-7.1(a), the habitual felon statute, and *State v.*

*Ross*, 221 N.C. App. 185, 188 (2012), to conclude that any person who is convicted of or pleads guilty to three felony offenses attains habitual felon status. *Mincey*, 292 N.C. App. at 350. It held that the application of the habitual felon statute was compatible with the "primary goals" of the "recidivist statute" meant to "deter repeat offenders." *Id.* at 350–51 (cleaned up). Thus, the Court of Appeals declined to adopt Ms. Mincey's argument that habitual felon status should be determined based on whether the predicate felonies were felonies at the time of the offense for which the defendant was being sentenced. *Id.* at 351.

In his dissent, Judge Arrowood opined that he would have held that Ms. Mincey lacked a right of appeal under N.C.G.S. § 15A-1444(a2), but that he would have allowed her petition for writ of certiorari to review the adequacy of the factual bases underlying Ms. Mincey's guilty plea. *Id.* at 352 (Arrowood, J., dissenting). Further, Judge Arrowood explained that, in his view, statutory interpretation of the habitual felon statute and caselaw supported the conclusion that "courts are meant to examine the classifications of prior offenses at the time of the offense the defendant is being sentenced, not at the time the prior offense was committed." *Id.* at 352–54.

On 12 March 2024, Ms. Mincey filed the present appeal based on dissent, seeking review of the trial court's acceptance of her guilty plea to attaining habitual felon status. Then, on 25 March 2024, the State also filed a notice of appeal based on the dissent, seeking this Court's review of whether the Court of Appeals erred in holding there was a right to appeal following Ms. Mincey's guilty plea to habitual

felon status under N.C.G.S. § 15A-1444(a2)(3). Further, the State filed a petition for discretionary review as to additional issues and, in the alternative, a petition for writ of certiorari as to additional issues for this Court to determine whether the Court of Appeals erred in holding there was a right to appeal and whether the factual bases of a guilty plea are reviewed using a de novo standard. This Court allowed both of the State's petitions on 11 December 2024.

## II.    Analysis

### A.  Standard of Review

"This Court reviews the decision of the Court of Appeals to determine whether it contains any errors of law." *State v. Melvin*, 377 N.C. 187, 192 (2021) (quoting *State v. Golder*, 374 N.C. 238, 244 (2020)); *see also* N.C. R. App. P. 16(a). Determining whether the Court of Appeals erred when it held that Ms. Mincey had a right of appeal turns on the interpretation of N.C.G.S. § 15A-1444. Questions of law, such as questions of statutory interpretation, are reviewed de novo. *In re D.S.*, 364 N.C. 184, 187 (2010).

### B.  Ms. Mincey did not have a right of appeal.

In North Carolina, the right to appeal a criminal proceeding is created through our state statutes. *See generally* N.C.G.S. § 15A-1444(a), (g) (2025) (providing when a defendant may appeal or file a petition for writ of certiorari); *State v. Berryman*, 360 N.C. 209, 214 (2006) ("Similar to federal procedure, a North Carolina criminal defendant's right to appeal a conviction is provided entirely by statute."). A guilty

plea limits a defendant's right to appeal. Subsection 15A-1444(e) of the General Statutes provides:

> Except as provided in subsections (a1) and (a2) of this section and G.S. 15A-979, and except when a motion to withdraw a plea of guilty or no contest has been denied, the defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari. If an indigent defendant petitions the appellate division for a writ of certiorari, the presiding superior court judge may in his discretion order the preparation of the record and transcript of the proceedings at the expense of the State.

N.C.G.S. § 15A-1444(e) (2025).

As outlined by the statute, the right to appeal following a guilty plea is narrow. There are limited circumstances when a defendant is still entitled to an appeal of right after entry of a guilty plea, such as when the sentence imposed resulted from certain errors related to the defendant's prior record or conviction levels. N.C.G.S. § 15A-1444(a1), (a2) (2025). Most relevant here, subsection (a2)(3) provides an exception to the general limitation on appeals from a guilty plea for when a defendant's sentence "[c]ontains a term of imprisonment that is for a duration not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level." N.C.G.S. § 15A-1444(a2)(3) (2025); *see also id.* §§ 15A-1340.17, 15A-1340.23 (prescribing the aggravated, presumptive, and mitigated range of sentencing for each class of offense and prior record level).

Our statutes and case law make clear that a defendant "is not entitled to appellate review as a matter of right" of the contention that the trial court improperly accepted a guilty plea, particularly where the defendant did not raise one of the challenges prescribed under the statute, withdraw the guilty plea, or petition for a writ of certiorari. *See* N.C.G.S. § 15A-1444(e); *State v. Bolinger*, 320 N.C. 596, 601–02 (1987) (explaining the limited bases under N.C.G.S. § 15A-1444 for appellate review of judgments entered upon guilty pleas). A defendant may petition the appellate division for a writ of certiorari, and the appellate division, which maintains jurisdiction and authority to issue prerogative writs, may then choose to exercise its authority to issue a writ of certiorari. *See* N.C.G.S. § 7A-32(c) (2025); N.C.G.S. § 15A-1444(e). In fact, this Court has said that a defendant may obtain appellate review of the acceptance of a guilty plea only upon issuance of a writ of certiorari. *Bolinger*, 320 N.C. at 601 (holding that the defendant who entered a guilty plea was not entitled to appellate review as a matter of right when the defendant did not withdraw a guilty plea and failed to petition for a writ of certiorari); *State v. Ledbetter*, 371 N.C. 192, 195 (2018) ("Subsection 15A-1444(e) specifically addresses review of a defendant's guilty plea through issuance of a writ of certiorari and contains no language limiting the Court of Appeals' jurisdiction or discretionary authority.").

After having been informed that a guilty plea would limit her right to direct appeal, Ms. Mincey entered the guilty plea willingly and voluntarily. She became subject to the limitations set forth under N.C.G.S. § 15A-1444(e), and, unless certain

exceptions applied, she was not entitled to right of appeal outside an issuance of a writ of certiorari. *See Bolinger*, 320 N.C at 601.

The Court of Appeals misinterpreted N.C.G.S. § 15A-1444(a2)(3) in holding that Ms. Mincey had a right of appeal. Though habitual felon status would enhance Ms. Mincey's sentencing, whether the second-degree forgery conviction from 1991 could sufficiently serve as a factual basis for her guilty plea to attaining habitual felon status under N.C.G.S. § 14-7.1 centers on interpretation of the habitual felon statute itself. *See generally* N.C.G.S. § 14-7.1(a) (2025) (prescribing persons defined as habitual felons, including which felony offenses are considered in determining whether someone has attained habitual felon status); *id.* § 14-7.1(b) ("For the purpose of this Article, a felony offense is defined to include all of the following: [listing applicable offenses] . . . ."). This was not a question of whether her sentence "[c]ontains a term of imprisonment that is for a duration not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level." N.C.G.S. § 15A-1444(a2)(3). Notably, Ms. Mincey conceded that based on the plea that was entered, the sentence would have been correct, or at least, would not have been challenged if not for her contention that the trial court erroneously accepted the guilty plea. Oral Argument at 8:58, *State v. Mincey*, No. 68A24 (N.C. Sep. 9, 2025), https://www.youtube.com/watch?v=hZ2lwReJqZA.

Having concluded there was no statutory right of appeal and that the Court of Appeals erred, we also hold that the Court of Appeals erred in reviewing the merits

of Ms. Mincey's appeal as it lacked jurisdiction to do so. The only way the Court of Appeals could have reached the merits of Ms. Mincey's appeal was via a writ of certiorari, which the court dismissed as moot.

The North Carolina Constitution and the Rules of Appellate Procedure prescribe authority for appellate review in our state. *See Ledbetter*, 371 N.C. at 194 ("The Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe." (quoting N.C. Const. art. IV, § 12(2))); *Berryman*, 360 N.C. at 214 ("Procedures for appeal to the appellate division are as provided in this Article, the rules of the appellate division, and Chapter 7A of the General Statutes." (quoting N.C.G.S. § 15A-1444(d) (2005))); *see also State v. Woolard*, 385 N.C. 560, 567–68 (2023) (holding that where no right of appeal existed, the State could petition this Court for certiorari and where a writ of certiorari was properly granted, this Court had jurisdiction to reach the merits); N.C. Const. art. IV, § 12(1) (providing this Court's ability to issue any remedial writs necessary in furtherance of its "general supervision and control over the proceedings of other courts").

The decision to issue a writ of certiorari ultimately rests in the sound discretion of the presiding court, and this Court has explained that certiorari is an "extraordinary remedial writ" that we use sparingly. *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 572–73 (2023) (cleaned up); *Woolard*, 385 N.C. at 568. To issue a writ of certiorari, we require petitioners to "show merit or that error was probably committed below" and "extraordinary circumstances." *Cryan*, 384 N.C. at 572. When

the Court of Appeals decides to issue the writ, then this Court reviews the issuance for abuse of discretion. *Id.* at 573. However, in this case, the Court of Appeals expressly declined to review Ms. Mincey's appeal through certiorari review. Instead of adhering to N.C.G.S. § 15A-1444, which established a well-defined structure for limited appeals from guilty pleas, the Court of Appeals improperly concluded that Ms. Mincey's appeal fell under the exception prescribed in N.C.G.S. § 15A-1444(a2)(3), which erroneously permitted her to retain the benefit of pleading guilty while preserving the right to challenge her conviction for attaining habitual felon status. Further, because the Court of Appeals did not properly allow certiorari review below, it exercised jurisdiction that it did not have to reach the merits. *See Woolard*, 385 N.C. at 568–69.

Appellate courts cannot exercise jurisdiction that they do not possess. *See Veazey v. City of Durham*, 231 N.C. 357, 364 (1950) (holding that an appeal to the Supreme Court from a non-appealable order of the trial court confers no power on the Supreme Court); *see also State v. Wagner*, 356 N.C. 599, 601 (2002) (vacating a Court of Appeals' opinion as it pertained to a conviction over which the trial court, and consequently the Court of Appeals, lacked jurisdiction). When a court decides a matter over which it lacks jurisdiction, the proceeding is null and void. *See In re T.R.P.*, 360 N.C. 588, 590 (2006) (explaining that a court must have jurisdiction over a case and the type of relief sought to decide the case; otherwise, its judgment is void).

Having determined that Ms. Mincey had no right of appeal and therefore the Court of Appeals did not have jurisdiction to reach the merits of Ms. Mincey's appeal, we decline the State's invitation to overturn the standard of review set forth in *State v. Robinson*, 381 N.C. 207 (2022), regarding an appellate court's review of a trial court's determination of a factual basis for a guilty plea. *See In re Peoples*, 296 N.C. 109, 147 (1978) (stating that this Court's function is not to "entertain or proceed with a cause merely to determine abstract propositions of law"); *In re A.K.*, 360 N.C. 449, 452 (2006) (stating that this Court will usually "decide a case only if the controversy which gave rise to the action continues at the time of appeal"); *Hoke Cnty. Bd. of Educ. v. State*, No. 425A21-3, slip op. at 86 (N.C. Apr. 2, 2026) (stating that "[a]n appellate court, for instance, must first review its own [subject matter] jurisdiction" and the jurisdiction of the court below to determine whether it has the authority to pass on the merits of a case).

## III.   Conclusion

We hold that the Court of Appeals erred in holding that Ms. Mincey had a right of appeal. The Court of Appeals therefore lacked jurisdiction to reach the merits of Ms. Mincey's appeal. Thus, we reverse the decision of the Court of Appeals and remand to that court for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.