IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-380

No. COA21-693

Filed 7 June 2022

Davidson County, No. 20 CRS 50976, 21 CRS 681

STATE OF NORTH CAROLINA

v.

JONATHAN DANIEL ORE

Appeal by defendant from judgments entered 22 June 2021 by Judge V. Bradford Long in Davidson County Superior Court. Heard in the Court of Appeals 11 May 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Shelby N.S. Boykin, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for defendant-appellant.*

TYSON, Judge.

¶ 1        Jonathan Daniel Ore ("Defendant") seeks appellate review of orders modifying his probation and holding him in contempt. Defendant has no statutory right to appeal the waiver of counsel or the modification of his probation. Defendant recognizes this fact and has filed a petition for writ of certiorari ("PWC"). We dismiss Defendant's PWC seeking review of the waiver of counsel and the modification of his

probation. We allow Defendant's other PWC to review the trial court's order holding him in contempt and affirm.

## I. Background

Defendant pleaded guilty to possession of methamphetamine on 3 November 2020. He was sentenced to serve a term of 8 to 19 months imprisonment, which was suspended, and he was placed on supervised probation for twelve months. Defendant's suspension of sentence and probation judgment included among other conditions that he: (1) obtain a substance abuse assessment; (2) complete any recommended treatment; (3) if unemployed, complete the Treatment Accountability for Safer Communities ("TASC") program; (4) submit to drug testing; and, (5) not engage in further criminal activity.

On 27 May 2021, Kierra Mobley ("Officer Mobley"), filed a probation violation report alleging Defendant had willfully violated the conditions of his probation by: (1) testing positive three times for controlled substances on 18 March 2021, 19 April 2021, and 27 May 2021; (2) failing to report to his probation officer on 25 May 2021 and 26 May 2021; (3) being charged with criminal trespass on 22 May 2021; and, (4) being discharged from TASC for failing to obtain a drug and alcohol assessment within 30 days of his referral.

A probation violation hearing was noticed for and held on 22 June 2021. At

the hearing on his violation report, Defendant indicated to the trial court he desired to represent himself. The State requested the trial court to conduct a colloquy into Defendant's knowing and voluntary waiver of counsel prior to accepting Defendant's request. The trial court inquired into Defendant's request, informed him of potential adverse consequences of proceeding unrepresented, and accepted his waiver of counsel. Defendant signed a written waiver of all assistance of counsel in open court.

¶ 5        Officer Mobley was called and testified about Defendant's multiple violations asserted in the 27 May 2021 probation violation report. Defendant did not cross-examine Officer Mobley nor did he testify or offer any evidence. The State recommended Defendant's probation be modified and extended for 6 months to allow him to undergo substance abuse treatment with the Drug and Alcohol Recovery Treatment Center ("DART Center").

¶ 6        The trial court agreed with the State's recommendation and ordered Defendant to be held in custody until he could enter the DART Center. Defendant did not testify, offer evidence, or argue his case, but stated he did not believe he was going to jail.

¶ 7        The trial court began to enter its findings when Defendant blurted out: "just activate my damn sentence. That's what you done." The trial court explained it was only holding Defendant in custody until he could receive DART therapy. Defendant responded, "[t]hat's crazy. I mean, y'all just tricked me all the way. Dang. Be honest. Why don't you f--king be honest with me some Godd--n time. I mean, y'all–y'all are

con artist (sic). Y'all con people." The trial court informed Defendant if he said "one more word" the court would "give [him] 30 days for direct criminal contempt."

¶ 8 The trial court found evidence supported the violations as alleged in the 27 May 2021 probation violation report and concluded Defendant was in knowing and willful violation of supervised probation without justifiable excuse. The trial court extended Defendant's probation term for 6 months and ordered him to complete the "DART drug/alcohol treatment program maintained by the North Carolina Department of Corrections." The trial court also ordered Defendant to remain in custody until he could attend DART.

¶ 9 The trial court clarified it would only allow Defendant to remain in custody for a maximum of two weeks while waiting for an opening for DART. If no opening became available within two weeks, the trial court would revisit treatment options. As Defendant was exiting the courtroom, he stated: "Come on, ma'am. You tricked me, Mobley. Why'd you do me like this? Y'all start all this sh-- all over again."

¶ 10 The trial court instructed the bailiffs to bring Defendant back before the court and began contempt proceedings. The trial court found Defendant to be in direct criminal contempt and ordered him to serve an active sentence of 30 days. The trial court made appellate entries for the contempt charge.

## II. Jurisdiction

### A. Modification and Extension of Probation

¶ 11        Defendant has no constitutional or common law right to appeal. "Similar to federal procedure, a North Carolina criminal defendant's right to appeal a conviction is provided entirely by statute." *State v. Berryman*, 360 N.C. 209, 214, 624 S.E.2d 350, 354 (2006) (citations omitted). Defendant entered no purported notice of appeal.

¶ 12        N.C. Gen. Stat. § 15A-1347(a) provides: "When a superior court judge as a result of a finding of a violation of probation, *activates a sentence or imposes special probation*, either in the first instance or upon a de novo hearing after appeal from a district court, the defendant *may* appeal under G.S. 7A-27." N.C. Gen. Stat. § 15A-1347(a) (2021) (emphasis supplied).

¶ 13        Defendant's initial term of probation was modified and extended after competent evidence of and findings and conclusions he had committed multiple willful violations. His sentence was not activated nor did the court impose a special condition of probation. *Id.* "[A] defendant does not have the right to appeal from an order that merely modifies the terms of probation where the [d]efendant's sentence was neither activated nor was it modified to 'special probation.'" *State v. Romero*, 228 N.C. App. 348, 350, 745 S.E.2d 364, 366 (2013) (Dillon, J.) (citation and first quotation marks omitted). Defendant has no right to appeal the modification and extension of his probation unless one of the two statutory conditions above is met. *Id.*

¶ 14        Recognizing he has no right to appeal, Defendant petitioned for a writ of certiorari to purport to invoke this Court's appellate jurisdiction, while showing no

merit or prejudice. *State v. Ricks*, 378 N.C. 737, 738, 862 S.E.2d 835, 837, 2021-NCSC-116, ¶ 1 (2021) ("[A]n appellate court may only consider certiorari when the petition shows merit, meaning that the trial court probably committed error at the hearing.") This Court is "without [statutory] authority to review, either by right or by certiorari, the trial court's modification of defendant's probation." *State v. Edgerson*, 164 N.C. App. 712, 714, 596 S.E.2d 351, 353 (2004); *see* N.C. Gen. Stat. § 15A-1347.

¶ 15        "*Certiorari* is a discretionary writ, to be issued only for good and sufficient cause shown." *State v. Rouson*, 226 N.C. App. 562, 564, 741 S.E.2d 470, 471 (2013) (citing *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959)) "A petition for the writ [of certiorari] must show merit or that [prejudicial and reversible] error was probably committed below." *Id.*

¶ 16        Other than recognizing this Court's *power of* jurisdiction to exercise our discretion of appellate review over petitions for writ of certiorari, nothing in the holdings of either *State v. Stubbs*, 368 N.C. 40, 770 S.E.2d 74 (2015) or *State v. Ledbetter*, 371 N.C. 192, 814 S.E.2d 39 (2018) bears any significance to the issues before us in this appeal.  Neither *Edgerson*, nor N.C. Gen. Stat. § 15A-1347 is cited in either opinion.

¶ 17        In *Stubbs*, our Supreme Court held:

> given that our *state constitution authorizes the General Assembly to define the jurisdiction of the Court of Appeals*, and given that the General Assembly has given that court

> broad powers to supervise and control the proceedings of any of the trial courts of the General Court of Justice, and given that *the General Assembly* has *placed no limiting language* in subsection 15A-1422(c) *regarding which party may appeal a ruling on an MAR*, we hold that the Court of Appeals has *jurisdiction to hear an appeal by the State of an MAR when the defendant has won relief from the trial court.*

*Stubbs*, 368 N.C. at 43, 770 S.E.2d at 76 (internal citations omitted) (emphasis supplied). *Stubbs* merely interprets N.C. Gen. Stat. § 15A-1422 to allow an appellate court to review the State's PWC to review a trial court's decision on the denial of the State's motion for appropriate relief ("MAR") in a superior court. *Id.*

¶ 18 In *Ledbetter*, our Supreme Court extended the same statutory analysis from MARs to PWCs seeking appellate review of guilty pleas, and held our Court has jurisdiction and consequently discretionary authority to allow appellate review of a PWC under N.C. Gen. Stat. § 15A-1444(e) (2017). *Ledbetter*, 371 N.C. 196, 814 S.E.2d at 42; N.C. Gen. Stat. § 15A-1444(e) ("Except as provided in subsections (a1) and (a2) of this section and G.S. 15A-979, and except when a motion to withdraw a plea of guilty or no contest has been denied, the defendant is not entitled to appropriate review *as a matter of right* when he has entered a plea of guilty or no contest to a criminal charge in the superior court, *but he may petition the appellate division for review by writ of certiorari.*") (emphasis supplied).

¶ 19 *Ledbetter* and *Stubbs* stand for the proposition that where a "valid statute gives

the Court of Appeals jurisdiction to issue a writ of certiorari, Rule [of Appellate Procedure] 21 cannot take it away." *Ledbetter*, 371 N.C. 196, 814 S.E.2d at 42 (citations omitted). Here, Defendant's purported PWC seeks appellate review of a statutory non-reviewable extension of his probation made pursuant to N.C. Gen. Stat. § 15A-1347. Nowhere has the General Assembly granted this Court authority to hear cases or consider a PWC to review an extension of probation except for two specified instances in N.C. Gen. Stat. § 15A-1347(a).

¶ 20       "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). The Supreme Court of North Carolina has not overruled *Edgerson*.

¶ 21       Neither *Stubbs* or *Ledbetter* cited bear on any issue in this case. "We are *without authority* to overturn the ruling of a prior panel of this Court on the same issue." *Poindexter v. Everhart*, 270 N.C. App. 45, 51, 840 S.E.2d 844, 849 (2020) (citation omitted) (emphasis supplied) (Dietz, Tyson, and Inman, JJ.). *Edgerson* remains binding precedent upon this Court. *Edgerson*, 164 N.C. App. at 714, 596 S.E.2d at 353. Despite my concurring colleagues' notion otherwise and stretching exercises, *Edgerson* has not been and cannot be overruled by implication, particularly where *Edgerson* nor the statute it relies upon are not cited in any opinion they

purport to rely upon. *Poindexter*, 270 N.C. App. at 51, 840 S.E.2d at 849.

¶ 22 "When two statutes apparently overlap, it is well established that the statute special and particular shall control over the statute general in nature, even if the general statute is more recent, unless it clearly appears that the legislature intended the general statute to control." *Seders v. Powell*, 298 N.C. 453, 459, 259 S.E.2d 544, 549 (1979). N.C. Gen. Stat. § 15A-1347(a) specifically applies to this Court's power to hear appeals from probation violation hearings.

¶ 23 Given this Court may possess *jurisdictional power* to review petitions for writ of certiorari or for other prerogative writs, that residual power does not compel this Court to review such a wholly frivolous petition, where Defendant failed to show any merit or potential prejudicial reversible error in the clear and uncontested facts before us. *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9.

¶ 24 This issue should have presented to this Court, if at all under an *Anders* brief. *Anders v. California,* 386 U.S. 738, 18 L.Ed.2d 493 (1967). Certiorari is a rare writ, based upon petitioner's burden of showing of both merit and prejudice. The petition is not a vehicle to ignore preservation, lack of objections, proffers or evidence, failure to appeal, or to provide a backdoor review for wholly unmeritorious claims, even in a death penalty case. *Grundler,* 251 N.C. at 189, 111 S.E.2d at 9.

¶ 25 Defendant's PWC shows no merit or prejudice to support his requested discretionary writ. *See Ricks*, 378 N.C. at 738, 862 S.E.2d at 837, 2021-NCSC-116, ¶

1 ("[A]n appellate court may only consider certiorari when the petition shows merit, meaning that the trial court probably committed error at the hearing."). To any extent Defendant has a cognizable right for PWC, in the exercise of our discretion we deny Defendant's PWC.

¶ 26     In compliance with the statute, Defendant's wholly frivolous PWC seeking this Court to review the trial court's order on the modification and extension of his probation violations is dismissed. Defendant's purported petition to review the trial court's order on his extension of supervision for unchallenged and not appealed probation violations is dismissed.

## B. Criminal Contempt

¶ 27     After finding Defendant to be in contempt and sentencing him, the trial court stated: "Enter notice of appeal for his contempt citation." Defendant responded "Thank you."

¶ 28     The transcript does not reflect Defendant entered either oral or written notice of appeal. Defendant again acknowledges the inadequacy of his notice of appeal and also petitions this Court to issue a writ of certiorari authorizing appellate review of the judgment finding him in contempt.

¶ 29     "[A] writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.

R. App. P. 21(a)(1).

¶ 30    A defective notice of appeal "should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake." *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 791 (2011) (citation and quotation marks omitted) (emphasis supplied).

¶ 31    Here, the State has not advanced any allegations tending to show it has been delayed, misled, or prejudiced by Defendant's defective notice of appeal. Defendant's intent to appeal can be "fairly inferred" from his colloquy with the trial court. *Id.* Given the trial court's immediate action of appellate entries, the State cannot show prejudice by the defective notice.

¶ 32    Defendant has lost his appeal of the judgment finding him in contempt through "failure to take timely action[.]" N.C. R. App. P. 21(a)(1). We allow Defendant's PWC, in the exercise of our discretion, and address the merits of the criminal contempt order.

### III.    Issue

¶ 33    Defendant argues the trial court erred in finding him in direct criminal contempt.

### IV.    Contempt Order

### A. Standard of Review

¶ 34        The standard of review in direct criminal contempt is "whether . . . competent evidence . . . support[s] the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *State v. Simon*, 185 N.C. App. 247, 250, 648 S.E.2d 853, 855 (2007) (citation and quotation marks omitted). "The trial judge's findings of fact are conclusive [on appeal] when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency." *State v. Coleman*, 188 N.C. App. 144, 148, 655 S.E.2d 450, 453 (2008) (citation, quotation marks, and ellipses omitted).

## B. Analysis

¶ 35        Defendant argues the trial court erred by finding him in direct criminal contempt. N.C. Gen. Stat. § 5A-11 (2021). Defendant asserts his words and actions in open court failed to establish he was in willful violation of the statute sanctioning direct criminal contempt, Defendant argues the trial court's findings of fact did not support the conclusion he was in willful criminal contempt of court.

¶ 36        "Criminal contempt is imposed in order to preserve the court's authority and to punish disobedience of its orders. Criminal contempt is a crime, and constitutional safeguards are triggered accordingly." *Watson v. Watson*, 187 N.C. App. 55, 61, 652 S.E.2d 310, 315 (2007) (internal citation omitted). "If a trial court's finding is supported by competent evidence in the record, it is binding upon an appellate court, regardless of whether there is evidence in the record to the contrary." *State v. Key*,

182 N.C. App. 624, 627, 643 S.E.2d 444, 447 (2007).

¶ 37        N.C. Gen. Stat. § 5A-11(a) articulates acts which constitute criminal contempt, including:

> (1) Willful behavior committed during the sitting of a court and directly tending to interrupt its proceedings.
>
> (2) Willful behavior committed during the sitting of a court in its immediate view and presence and directly tending to impair the respect due its authority.
>
> (3) Willful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution.

N.C. Gen. Stat. § 5A-11(a) (2021).

¶ 38        "Willfulness" under N.C. Gen. Stat. § 5A-11(a) is defined as "an act done deliberately and purposefully in violation of law, and without authority, justification, or excuse." *State v. Phair*, 193 N.C. App. 591, 594, 668 S.E.2d 110, 112 (2008) (citation and quotation marks omitted).

¶ 39        The trial court found Defendant's behavior in both words and actions in open court, despite warnings of his prior words, actions, and conduct, was improper. Defendant was found to have "exhibit[ed] disruptive behavior during the proceeding; by speaking over the judge and using profane language at the time of sentencing, by verbally shouting f--k and [by] using the Lord's name in vain." The trial court concluded, and the transcript shows, Defendant's conduct "interrupted the proceedings of the court and impaired the respect due its authority."

This finding of fact supports the trial court's conclusion of law that in the presence of the court, Defendant's words and actions willfully interrupted the proceedings and impaired the respect due the Court's authority beyond a reasonable doubt. The trial court did not err in holding Defendant in direct criminal contempt. N.C. Gen. Stat. § 5A-11. Defendant's argument is overruled.

## V. Conclusion

Defendant does not possess the statutory right to appeal the modification and extension of his probation or his informed and admitted waiver of counsel, nor does the statute provide this Court the statutory authority to review his PWC on modification of his probation. N.C. Gen. Stat. § 15A-1347; *Edgerson*, 164 N.C. App. at 714, 596 S.E.2d at 353. To any extent his petition may be cognizable, in the exercise of our discretion, Defendant's PWC to review the trial court's order modifying and extending his probation violation is wholly without merit or prejudice and his purported appeal therefrom is dismissed.

In the exercise of our discretion, we allow Defendant's other PWC and hold the trial court did not err in finding Defendant's willful conduct violated the direct criminal contempt in the statute. N.C. Gen. Stat. § 5A-11. The order of the trial court is affirmed. *It is so ordered.*

DISMISSED IN PART; AFFIRMED IN PART.

Judge DILLON concurs by separate opinion.

Judge DIETZ concurs by separate opinion.

DILLON, Judge, concurring.

I concur. I write separately to address the jurisdictional issue raised in the lead opinion, specifically our Court's authority to issue a writ of *certiorari* in order to review a trial court's modification of a defendant's probation. I agree with the statement in the lead opinion that we have "jurisdiction power" to entertain such writs and that our "residual power does not compel this Court to [grant] a wholly frivolous petition[.]" I do not agree, though, with any statement to the extent that such statement could be construed to suggest that we lack jurisdictional authority — statutory or otherwise — to issue such writ in this case, if we were so inclined. Rather, though *defendant* clearly has no statutory right to an appeal, *this Court* has been granted the power/authority by our General Assembly to issue a writ of *certiorari*.

I first explained in my concurring opinion in *State v. Stubbs* that it is our General Assembly, and not our Supreme Court, which has the constitutional authority to confer upon our Court jurisdiction to issue writs of *certiorari*:

> The North Carolina Constitution states that this Court has appellate jurisdiction "as the General Assembly may prescribe." N.C. Const. Article IV, Section 12(2).
>
> Our General Assembly has prescribed that this Court has jurisdiction "to issue . . . prerogative writs, including . . . certiorari . . . to supervise and control the proceedings of any of the trial courts [.]" N.C. Gen. Stat. § 7A-32(c) (2011).

> The General Assembly further has prescribed that the "practice and procedure" by which this Court exercises its jurisdiction to issue writs of certiorari is provided, in part, by "rule of the Supreme Court." *Id.*
>
> The Supreme Court has enacted the Rules of Appellate Procedure, which includes Rule 21, providing that writs of certiorari may be issued by either this Court or the Supreme Court in [certain] circumstances, none of which applies to the State's appeal in this case.
>
> * * *
>
> I believe that . . . our subject matter jurisdiction to issue writs of certiorari is not limited to the circumstances contained in Rule 21 [.]
>
> Additionally, in Rule 1 of the Rules of Appellate Procedure, our Supreme Court stated that the appellate rules "shall not be construed to extend or limit the jurisdiction of the courts of the appellate division[.]" *Id.*

232 N.C. App. 274, 287-88, 754 S.E.2d 174, 183 (2014) (Dillon, J., concurring).

¶ 45    Our Supreme Court essentially adopted my analysis, stating that "while Rule 21 might appear at first glance to limit the jurisdiction of the Court of Appeals [to issue writs of *certiorari*], the Rules [of Appellate Procedure] cannot take away jurisdiction given to that court by the General Assembly in accordance with the North Carolina Constitution." *State v. Stubbs*, 368 N.C. 40, 44, 770 S.E.2d 74, 76 (2015).

¶ 46    Our General Assembly — in the exercise of its constitutional authority — has granted our Court broad authority to issue writs of *certiorari* generally, and there is no statute that suggests that we do not have the authority to issue the writ to review

the trial court's order in this case. Indeed, the General Assembly has provided that our Court has "jurisdiction to review upon appeal decisions of [any trial court] upon matters of law or legal inference, in accordance with the system provided in this Article." N.C. Gen. Stat. § 7A-26 (2021). And later in the Article, our General Assembly has conferred upon our Court jurisdiction to issue writs of *certiorari* "in aid of [our] jurisdiction, or to supervise and control the proceedings of any of the trial courts." N.C. Gen. Stat. § 7A-32(c).

¶ 47 Though our Supreme Court does not have the constitutional authority to define our *jurisdiction* in granting writs, that Court does have concurrent authority with our General Assembly to provide "[t]he practice and procedure" that our Court must follow when considering petitions for writs. *Id.* And in those instances where we have jurisdiction to issue a writ, but also where neither our Supreme Court nor the General Assembly has established by rule or statute a procedure for exercising our jurisdiction, we may exercise said jurisdiction "according to the practice and procedure of the common law." *Id.*

¶ 48 I do recognize that our Supreme Court's decision in *State v. Ricks*, 378 N.C. 737, 738, 2021-NCSC-116, ¶ 1 contains language which suggests that our Court has no authority to issue a writ of *certiorari* "when the petition shows [no] merit." However, I believe this statement is *dicta* and, otherwise, not intended to be a limitation on our jurisdiction to issue a writ of *certiorari*. Indeed, it is not uncommon

for our Court to issue a writ in order to review a defendant's appeal where there is a jurisdictional defect in his or her notice of appeal, where the State has not been prejudiced by the defect, *even where said defendant's appeal has little, if any merit.* Our Court does not always allow such writs, especially where the issues raised have little merit. But we might choose to do so, for instance, where considering and resolving the issues would promote judicial economy by eliminating the need for the trial court to have to consider a subsequent motion for appropriate relief or ineffective assistance of counsel.

¶ 49        I also recognize that language in *Ricks* could be read to suggest that our Supreme Court has the authority to limit the exercise of our jurisdiction conferred upon us by the General Assembly to issue such writs where that Court concludes that we have "abuse[d our] discretion." However, I do not read *Ricks* as holding that our Court lacks jurisdiction to issue a writ to review a legal issue that otherwise was not preserved at the trial court (and therefore would require us to invoke Rule 2 to reach). Such a reading would suggest a limitation of our jurisdiction to issue such writs, which our Supreme Court does not have the constitutional authority to do. Rather, I construe our Supreme Court's holding in *Ricks* simply to mean that it was an abuse of discretion for our Court *to invoke Rule 2* once the case was before us on *certiorari*, because we had already shown grace by granting the writ to let the appellant in the door.

¶ 50        In sum, my understanding is that our General Assembly establishes our jurisdiction to review issues of law arising in our trial courts and that our General Assembly has conferred upon our Court broad authority to issue writs of *certiorari* to reach those legal issues. Also, it is my understanding that our Supreme Court can establish rules, instituting practices and procedures by which we are to exercise our jurisdictional authority, but that such rules cannot otherwise limit our jurisdiction, as that Court recognized in *Stubbs*.

¶ 51        In any event, our Supreme Court in *Stubbs* recognized that our Court has been granted the authority by our General Assembly to issue a writ of *certiorari* to review an order in a situation where our General Assembly provided the party no *right* to appeal. *Id.* at 44, 770 S.E.2d at 76. Just like in *Stubbs*, the fact that the General Assembly has expressly stated that the defendant here has *no right* to appeal does not strip *our Court* of our authority to issue a writ of *certiorari*, which was granted to us by the General Assembly.

DIETZ, Judge, concurring.

I concur in the result of this case but I do not join the statement that this Court is "without [statutory] authority to review, either by right *or by certiorari*, the trial court's modification of defendant's probation." This is not a correct statement of the law. We have the authority to review this issue by certiorari. *See* N.C. Gen. Stat. § 7A-32; *State v. Stubbs*, 368 N.C. 40, 44, 770 S.E.2d 74, 76 (2015); *State v. Thomsen*, 369 N.C. 22, 25, 789 S.E.2d 639, 641–42 (2016).

This well-settled legal principle was cemented in an epic sequence of remands, reversals, and disavowals in *State v. Ledbetter,* 243 N.C. App. 746, 747, 779 S.E.2d 164, 165 (2015), *remanded for reconsideration in light of Stubbs*, 369 N.C. 79, 793 S.E.2d 216 (2016), *on remand*, 250 N.C. App. 692, 692, 794 S.E.2d 551, 552 (2016), *reversed and remanded again*, 371 N.C. 192, 814 S.E.2d 39 (2018), *on remand*, 261 N.C. App. 71, 819 S.E.2d 591 (2018), *discretionary review denied in special order that "disavows the language in the last paragraph of the Court of Appeals's decision,"* 372 N.C. 692, 830 S.E.2d 820 (2019).

Yet here we are again, with a Court of Appeals opinion citing a case (this time, *State v. Edgerson*) that relies on Rule 21 for the proposition that we are without authority to review an issue by certiorari because the applicable statute provides no appeal by right. And, worse yet, that citation accompanies a categorical statement that is inconsistent with *Stubbs*, *Thomsen*, and *Ledbetter* and uses precisely the sort

of language that our Supreme Court disavowed in *Ledbetter* and quite plainly instructed us not to use again.

¶ 55 As I previously have explained, "I will faithfully adhere to our responsibility to follow controlling precedent and leave it to our Supreme Court to determine if that precedent should change." *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 2021-NCCOA-689, ¶ 38 (Dietz, J., concurring). The Supreme Court has spoken. We have the authority under N.C. Gen. Stat. § 7A-32 to issue a writ of certiorari in our discretion to review a trial court decision for which the General Statutes do not provide litigants with an appeal by right. And, in exercising that authority, we should not cite to case law, or make statements, suggesting that Rule 21 of the Rules of Appellate Procedure in any way diminishes that authority.

¶ 56 Given the overwhelming weight of Supreme Court precedent instructing this Court *not* to rely on these outdated cases or use this sort of language, it is frustrating to continue seeing it in our opinions. Had the lead opinion simply acknowledged that we have statutory authority to issue a writ of certiorari but that, in our discretion, we deny the petition in this case because the defendant has not presented a meritorious argument, this would be a unanimous, single-opinion decision. Instead, the lead opinion insists that *Edgerson*—because it is not cited in *Stubbs*, *Thomsen*, and *Ledbetter*—is still good law on this issue. That is not an accurate statement of the law and thus I concur only in the result of this case.